Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| B2B FACTORING INVESTMENTS LLC<br><br>Recurrido<br><br>v.<br><br>ALACENA MARINA LLC D/B/A ALACENA BISTRO MARKET PLACE D/BA ALACENA BISTRO & MARKET PLACE; CARLOS J. ZAYAS PÉREZ<br><br>Peticionaria | KLCE202500022 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br><br>Caso Núm.:<br>CG2024CV02236<br><br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de enero de 2025.

Comparece Alacena Marina LLC DBA Alacena Bistro Market Place DBA Alacena Bistro & Market Place (en adelante, Alacena) y Carlos J. Zayas Pérez (en adelante, señor Zayas Pérez) (en conjunto, peticionarios) mediante un recurso de *Certiorari,* para solicitarnos la revisión de la *Resolución,* emitida el 6 de diciembre de 2024, y notificada el 13 de diciembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, TPI).[1] Mediante la *Resolución* recurrida, el foro de instancia denegó una solicitud de relevo de sentencia instada por los peticionarios.

Por los fundamentos que expondremos, se *expide* el auto de certiorari y se *revoca* la *Resolución* recurrida.

---

[1] Intitulada *Resolución Final.* Apéndice del recurso, a la pág.73. Véase el Sistema Unificado de Manejo y Administración de Casos (SUMAC) a la Entrada 16.

Número Identificador

SEN2025_____

I

El caso de marras tuvo su génesis cuando, el 24 de junio de 2024, las partes del título instaron una *Petición de pronunciamiento por consentimiento* (Petición).[2] Mediante la *Petición* incoada, las partes expusieron haber suscrito dos (2) contratos, el 16 de junio de 2023. El *primero*, fue un *Contrato para la compraventa de ingresos futuros* (contrato de compraventa), en el cual Alacena se comprometió a ceder, vender y transferir la cantidad de $165,000.00 dólares, de las ventas futuras adquiridas de B2B Factoring Investments LLC (en adelante, B2B y/o parte recurrida), por el precio de $209,550.00 dólares.[3] Por otro lado, el *segundo* contrato fue suscrito por el señor Zayas Pérez, agente residente de Alacena.[4] En el segundo contrato, el señor Pérez suscribió una garantía personal, en la cual garantizó el cumplimiento de todas las obligaciones de Alacena. Conforme se desprende de los autos, tanto el contrato de compraventa, la garantía personal y la *Petición* fueron suscritas con fecha del 16 de junio de 2023. Se desprende, además, que la referida *Petición* fue juramentada por el señor Zayas Pérez.

Según surge de los autos ante nuestra consideración, la *Petición* se fundamentó en el incumplimiento, por parte de Alacena, con sus obligaciones contractuales, específicamente, el pago de la suma de $128,689.10 dólares, por concepto de principal adeudado al 23 de mayo de 2024, junto con los intereses acumulados a razón del 16% anual. Además, esbozó que se encontraban pendientes: (i) $52,387.50 dólares, en costas, gastos y honorarios de abogado; (ii) una penalidad de $5,000.00 dólares, y (iii) $150.00 dólares, por concepto de radicación del UCC, conforme a lo acordado entre las partes. A tenor, las partes del título solicitaron al foro primario que

---

[2] Apéndice del recurso, a las págs. 1-22.
[3] *Íd.*, a la pág. 1 y 6-17.
[4] *Íd.*, a la pág. 1 y 18-20.

se emitiera un dictamen por consentimiento, al amparo de la Regla 35.4 de Procedimiento Civil de Puerto Rico.[5]

Conviene mencionar que, aun cuando todas las partes de autos figuraron como peticionarios en la comparecencia de la *Petición*, al momento de la presentación de la misma, B2B contaba con representación legal, no así los peticionarios, quienes se encontraban por derecho propio.[6] Prueba de lo anterior, es que, luego de la presentación de la *Petición*, pero en la misma fecha, los peticionarios, por conducto de la representación legal de B2B, presentaron una *Moción informativa sobre aranceles* en la cual incluyeron el pago de sus aranceles para comparecer al pleito.[7]

Luego, el 16 de septiembre de 2024, B2B instó *una Moción reafirmando sentencia por consentimiento*. En su escrito, solicitó, en síntesis, que cónsono a lo peticionado, dictara sentencia por consentimiento.[8] En respuesta, mediante *Orden,* emitida el 18 de septiembre de 2024, y notificada al día siguiente, el foro primario le ordenó que presentara un proyecto de sentencia por consentimiento.[9] Conviene mencionar que dicha *Orden* no le fue notificada a las partes por derecho propio.

En cumplimiento con lo ordenado, el 23 de septiembre de 2024, B2B presentó una *Moción en cumplimiento de orden* a la cual le adjuntó un proyecto de sentencia para la consideración del tribunal de instancia.[10]

Recibida la moción, el 23 de septiembre de 2024, el tribunal de instancia emitió su *Sentencia por consentimiento* (Sentencia).[11] Dicha *Sentencia* fue notificada a todas las partes, el 27 de

---

[5] 32 LPRA Ap. V, R. 35.4.
[6] Apéndice del recurso, a la pág. 5.
[7] *Íd.,* a las págs. 23-24.
[8] *Íd.,* a la pág. 28.
[9] *Íd.,* a la pág. 29.
[10] *Íd.,* a las págs. 30-32.
[11] *Íd.,* a la pág. 33.

septiembre de 2024.[12] En esta, el tribunal *a quo* autorizó lo solicitado por las partes en la *Petición* y dictó *Sentencia* conforme a la Regla 35.4 de Procedimiento Civil de Puerto Rico.[13] Además, dispuso que la misma advendría final y firme, al amparo de la precitada regla.

Semanas más tarde, el 8 de octubre de 2024, comparecieron los peticionarios mediante una *Moción asumiendo representación legal y en solicitud de relevo de sentencia.*[14] En lo atinente, los peticionarios comparecieron por primera vez por conducto de abogado. En cuanto a la solicitud de relevo de sentencia, los peticionarios alegaron nunca haber sido notificados ni emplazados respecto al caso de epígrafe. Esbozaron que fue el 7 de octubre de 2024, cuando tuvieron conocimiento, por primera vez, de la existencia del procedimiento y de una sentencia dictada en su contra. Sostuvieron que esas irregularidades procesales afectaban la validez de la sentencia emitida.

Asimismo, los peticionarios negaron haber instado una *Petición* de pronunciamiento por consentimiento. Arguyeron no haber firmado el documento sometido, entiéndase, la *Petición*, el cual implicaba su sometimiento voluntario a la jurisdicción del Tribunal. Según sostuvieron, el juramento asociado a la *Petición* tenía fecha del 16 de junio de 2023, mientras que la firma de la *Petición* estaba fechada el 21 de junio de 2024. En otras palabras, adujeron que el juramento fue suscrito un año y cinco días antes de la presentación de la *Petición*. Además, negaron que las iniciales contenidas en cierto documento les pertenecieran. En línea de lo anterior, los peticionarios afirmaron que la *Petición* fue alterada

---

[12] Véase el SUMAC, a la Entrada 7.
[13] 32 LPRA Ap. V, R. 35.4.
[14] Apéndice del recurso, a las págs. 34-39.

fraudulentamente por B2B, para obtener una sentencia en su contra, sin garantizar el debido proceso de ley.

Por otro lado, los peticionarios alegaron que B2B omitió acumular a una parte indispensable en la *Petición*, es decir, no incluyeron a la esposa del señor Zayas, asumiendo que B2B tenía conocimiento de que este se encontraba casado bajo el régimen económico de sociedad legal de bienes gananciales. Según manifestaron, esta omisión constituyó una violación a las disposiciones de la Regla 10.2 de Procedimiento Civil de Puerto Rico.[15] A tenor, solicitaron al foro primario que dejara sin efecto la *Sentencia* dictada; desestimara el caso por dejar de acumular parte indispensable y emitiera una orden de cese y desista de cualquier intento de ejecución de sentencia.

En el ínterin, el 9 de octubre de 2024, B2B instó una *Solicitud de ejecución de sentencia*.[16] En síntesis, la parte recurrida alegó que, el 27 de septiembre de 2024, el tribunal de instancia dictó una *Sentencia* por consentimiento contra los peticionarios, condenándolos al pago de $128,689.10 dólares, al 23 de mayo de 2024, más los intereses acumulados por concepto de incumplimiento a razón del 16% anual; así como $52,387.50 dólares por concepto de costas, gastos y honorarios de abogado, $5,000.00 dólares en penalidad y $150.00 dólares por la radicación del UCC. En consecuencia, solicitaron al Tribunal que emitiera una orden de ejecución de sentencia y el correspondiente mandamiento de ejecución dirigido al Alguacil del Tribunal, a los fines de embargar e incautar cualquier propiedad mueble o inmueble, excepto la residencia principal, en cantidades suficientes para satisfacer las sumas adeudadas.

---

[15] 32 LPRA Ap. V, R. 10.2.
[16] Apéndice del recurso, a las págs. 50-58.

En respuesta, mediante *Orden,* notificada el 24 de octubre de 2024, en lo atinente, el tribunal de instancia concedió término a la parte recurrida para expresarse.[17] Sobre el particular, mediante *Resolución,* notificada el 25 de octubre de 2024, el foro de instancia dispuso declarar "No Ha Lugar por el momento".[18] Empero, en dicha *Resolución,* el foro primario, nuevamente, le requirió a B2B expresarse sobre la solicitud de relevo de sentencia instada por los peticionarios.[19]

Con relación a la solicitud de relevo de sentencia, el 14 de noviembre de 2024, B2B presentó una *Moción en oposición a solicitud de relevo de sentencia.*[20] La parte recurrida, esbozó que, conforme a la Regla 35.4 de Procedimiento Civil,[21] no era necesario la utilización del procedimiento ordinario, dado que los peticionarios habían consentido expresamente a que se dictara una sentencia en su contra y habían suscrito una declaración jurada a esos efectos. En consecuencia, consideraron innecesario el emplazamiento de los peticionarios conforme a dicha regla. Asimismo, destacaron que las firmas contenidas en el contrato de compraventa y la garantía personal, las cuales no fueron controvertidas por los peticionarios, eran las mismas que figuraban en la *Petición.*

En respuesta a la alegación de los peticionarios sobre la falsedad de la firma del señor Zayas Pérez, en la Petición firmada el 21 de junio de 2024, la parte recurrida afirmó que dicha aseveración era incorrecta. Sostuvo que la *Petición* fue efectivamente suscrita, el 16 de junio de 2023, según consta en la declaración jurada del notario Jean Paul Julia Díaz. Además, sostuvo que dicha *Petición*

---

[17] Apéndice del recurso, a la pág. 59.
[18] *Íd.,* a la pág. 61. Véase, además, el SUMAC, a la Entrada 14, en el volante de notificación, el cual refiere que el escrito que atiende esta *Resolución* es la *Solicitud de Ejecución de Sentencia* instada por la parte recurrida.
[19] Apéndice del recurso, a la pág. 61. Véase, además, el SUMAC, a la Entrada 8.
[20] Apéndice del recurso, a las págs. 62-72.
[21] 32 LPRA Ap. V, R. 35.4.

fue presentada como parte del cumplimiento del contrato de compraventa, con el propósito de remediar incumplimientos contractuales relacionados con las obligaciones de los peticionarios.

Finalmente, la parte recurrida respondió a la alegación de los peticionarios, sobre la necesidad de emplazar a la esposa del señor Zayas Pérez y a la sociedad legal de bienes gananciales, aludiendo a su carácter de parte indispensable. Refutaron esta postura, señalando que dicha disposición no operaba automáticamente y que era necesario demostrar en qué medida los derechos e intereses de la señora Quiñones Mora y la sociedad legal de bienes gananciales, entre el señor Zayas Pérez y su esposa, se verían afectados. Además, argumentaron que no existía evidencia de que los bienes de Alacena y los bienes privativos del señor Zayas Pérez, en su rol de garantizador, no fueran suficientes para satisfacer las sumas adeudadas. A tenor, solicitó al foro primario que denegara la solicitud de relevo de sentencia incoada por los peticionarios y, en consecuencia, ordenara la ejecución de la *Sentencia,* emitida el 23 de septiembre de 2024,[22] y notificada el 27 de septiembre de 2024.[23]

En respuesta, el 6 de diciembre de 2024, el foro *a quo* emitió la *Resolución* recurrida.[24] La misma fue notificada el 13 de diciembre de 2024.[25] Mediante la *Resolución* recurrida, el tribunal de instancia declaró *No Ha Lugar* la solicitud de relevo de sentencia.

Insatisfechos con lo resuelto, el 9 de enero de 2025, comparecieron los peticionarios mediante un recurso de *Certiorari* y esgrimieron los siguientes dos (2) señalamientos de error:

Primer Error:

Erró el Tribunal de Primera Instancia al no relevar la sentencia dictada, ya que la misma afecta los bienes de la Sociedad Legal de Bienes Gananciales compuesta por el Sr. Carlos J. Zayas Pérez y la Sra. Heydimar Quiñones Mora que fue creada el 15 de diciembre de 2018, fecha

---

[22] Apéndice del recurso, a la pág. 33.
[23] Véase el SUMAC, a la Entrada 7.
[24] Apéndice del recurso, a la pág. 73.
[25] Véase el SUMAC, a la Entrada 16.

en la que contrajeron nupcias; más sin embargo la parte recurrida no incluyó como partes indispensables a la Sra. Heydimar Quiñones Mora, ni a la Sociedad Legal de Bienes Gananciales compuesta por el Sr. Carlos J. Zayas Pérez y la Sra. Heydimar Quiñones Mora por lo que la sentencia por Consentimiento Dictada afecta los derechos constitucionales de dichas partes indispensables con relación al interés propietario de dichas partes.

Segundo Error:

Erró el Tribunal de Primera Instancia al no relevar la sentencia dando por auténtico un documento que fue alterado a maquinilla por la parte recurrida luego del 16 de junio de 2023, que no es reconocido por la parte recurrente.

Por otro lado, el 17 de enero de 2025, compareció la parte recurrida mediante *Oposición a expedición de Certiorari y/o Alegato en oposición a Certiorari.* Con el beneficio de la comparecencia de ambas partes, procederemos a disponer del presente recurso.

II

## A. Certiorari

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[26] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

[…].

El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el

---

[26] 32 LPRA Ap. V, R. 52.1.

Tribunal de Apelaciones no tiene que fundamentar su decisión.[27]

[…].

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

[…].

Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.

[…].[28]

Establecido lo anterior, precisa señalar que el recurso de *Certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[29] A diferencia del recurso de apelación, el auto de *Certiorari* es de carácter discrecional.[30] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[31] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[32] Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime que el Tribunal deberá considerar los siguientes criterios para expedir un auto de *Certiorari:*

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

---

[27] 32 LPRA Ap. V, R. 52.1.
[28] *Íd.*
[29] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).
[30] *Rivera Figueroa v. Joes's European Shop,* 183 DPR 580, 596 (2011).
[31] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).
[32] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, a la pág. 435.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [33]

El Tribunal Supremo de Puerto Rico ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[34] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[35]

**B. El relevo de Sentencia**

La Regla 49.2 de las Reglas de Procedimiento Civil,[36] aborda lo relativo a remedios contra las sentencias u órdenes. En específico, dispone lo concerniente a lo que sucede cuando hay errores, inadvertencia, sorpresa, negligencia excusable, descubrimiento de nueva prueba y/o fraude. Así, pues, la antedicha regla establece el mecanismo procesal que se tiene disponible para solicitar al foro de instancia el relevo de los efectos de una sentencia cuando esté

---

[33] 4 LPRA Ap. XXII-B, R.40.
[34] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[35] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[36] 32 LPRA Ap. V, R. 49.2.

presente alguno de los fundamentos antes expuestos.[37] Sobre este

particular, la Regla 49.2 expresa lo siguiente:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> (a) error, inadvertencia, sorpresa o negligencia excusable;
>
> (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
>
> (c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;
>
> (d) nulidad de la sentencia;
>
> (e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o
>
> (f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.
>
> Las disposiciones de esta regla no aplicarán a las sentencias dictadas en pleitos de divorcio, a menos que la moción se funde en las razones (c) o (d). La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Una moción bajo esta Regla 49.2 no afectará la finalidad de una sentencia ni suspenderá sus efectos. Esta regla no limita el poder del tribunal para:
>
> > (1) conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;
> >
> > (2) conceder un remedio a una parte que en realidad no haya sido emplazada, y
> >
> > (3) dejar sin efecto una sentencia por motivo de fraude al tribunal.
> > Mientras esté pendiente una apelación o un recurso de *certiorari* de una resolución final en procedimiento de jurisdicción voluntaria, el tribunal apelado no podrá conceder ningún remedio bajo esta regla, a menos que sea con el permiso del tribunal de apelación. Una vez que el tribunal de apelación dicte sentencia, no podrá concederse ningún remedio bajo esta regla que sea incompatible con el mandato, a menos que se obtenga previamente permiso para ello del tribunal de apelación. En ambos casos, la moción de relevo deberá siempre presentarse ante el tribunal apelado dentro del término antes señalado, y si éste determina que estaría dispuesto a conceder el

---

[37] *García Colón et al v. Sucn. González*, 178 DPR 527, 539 (2010); *De Jesús Viñas v. González Lugo*, 170 DPR 499, 513 (2007); *Náter v. Ramos*, 162 DPR 616, 624 (2004).

remedio, se acudirá entonces ante el tribunal de apelación para solicitar el referido permiso.[38]

Para que proceda el relevo de sentencia bajo la referida regla, es necesario que: (i) el peticionario aduzca al menos, una de las razones enumeradas en esa regla y; (ii) el mismo estará obligado a justificar su solicitud amparándose en una de las referidas causales.[39] Además, la moción deberá ser presentada dentro de un término razonable, pero en ningún caso luego de transcurridos seis (6) meses de haberse registrado la sentencia u orden, o haberse llevado a cabo el procedimiento. Por otra parte, la presentación de la referida moción no afectará la finalidad de una sentencia ni suspenderá sus efectos.[40]

Es de notar que la Regla 49.2 es categórica al establecer que el relevo no se podrá presentar en ningún caso luego de transcurridos los seis (6) meses de registrada la determinación del relevo;[41] siendo el término de presentación uno fatal, cuyo transcurrido el referido plazo, no puede adjudicarse.[42] El Tribunal Supremo de Puerto Rico aclaró, además, que el término de seis (6) meses en cuestión no se amplía por el hecho de que se haya entablado un procedimiento de apelación o revisión.[43]

De otro modo, la referida regla provee un mecanismo post sentencia para impedir que se vean frustrados los fines de la justicia mediante tecnicismos y sofisticaciones.[44] Ahora bien, nuestro Tribunal Supremo ha expresado que, la Regla 49.2 de Procedimiento Civil no es una llave maestra para reabrir a capricho el pleito ya adjudicado y echar a un lado la sentencia correctamente dictada.[45]

---

[38] 32 LPRA Ap. V, R. 49.2.
[39] *García Colón et al v. Sucn. González,* supra, a la pág. 540.
[40] *Íd.*
[41] *Sánchez Ramos v. Troche Toro,* 111 DPR 155, 157-158 (1981).
[42] *Bco. Santander P.R v. Fajardo Farms Corp.,* 141 DPR 237, 243 (1996).
[43] *Piazza Vélez v. Isla del Río, Inc.,* 158 DPR 440, 449 (2003).
[44] *García Colón et al v. Sucn. González,* supra, a la pág. 539.
[45] *Ríos v. Tribunal Superior,* 102 DPR 793, 794 (1974).

Además, la consabida Regla tampoco sustituye los recursos de apelación o reconsideración.[46]

Por otro lado, la Regla otorga al Tribunal la facultad de relevar a una parte de los efectos de una sentencia cuando se determine su nulidad.[47] Entiéndase, una sentencia es nula cuando se ha dictado sin jurisdicción o cuando al dictarla se ha quebrantado el debido proceso de ley.[48] Este precepto tiene como fin establecer un justo balance entre el interés de que los casos sean resueltos en los méritos, efectuando justicia sustancial, pero que, a su vez, los litigios lleguen a su fin.[49]

Por último, es necesario resaltar que el relevo a una parte de los efectos de una sentencia es una decisión discrecional, salvo en los casos de nulidad o cuando la sentencia ha sido satisfecha;[50] por lo que, en la determinación de la concesión de un remedio contra los efectos de una sentencia, el tribunal deberá determinar si bajo las circunstancias específicas del caso existen razones que justifiquen dicha concesión.[51] Ahora bien, el más alto foro ha expresado que cuando exista controversia sobre las razones esgrimidas en una moción de relevo de sentencia, estas deben "interpretarse liberalmente y cualquier duda debe resolverse a favor del que solicita que se deje sin efecto una sentencia".[52] No obstante, lo anterior, cabe resaltar que esta regla no está disponible para alegar cuestiones sustantivas que debieron haber sido planteadas mediante recursos de reconsideración o apelación.[53]

---

[46] *García Colón et al v. Sucn. González*, supra, a la pág. 541; *Olmeda Nazario v. Sueiro Jiménez*, 123 DPR 294, 299 (1989).

[47] *García Colón et al v. Sucn. González*, supra, a la pág. 543.

[48] *Íd.*

[49] *Íd.*, a la pág. 540.

[50] *García Colón et al v. Sucn. González*, supra, a la pág. 540; *Rivera v. Algarín*, 159 DPR 482, 490 (2003); *Garriga Gordils v. Maldonado Colón*, 109 DPR 817, 823–824 (1980).

[51] *García Colón et al v. Sucn. González*, supra, a la pág. 540.

[52] *Íd.* a la pág. 541; citando a *Díaz v. Tribunal Superior*, 93 DPR 79, 87 (1966).

[53] *García Colón et al v. Sucn. González*, supra, a la pág. 541.

### C. La Sentencia por consentimiento

La Regla 35.4 de Procedimiento Civil,[54] permite que un Tribunal dicte sentencia cuando las partes convienen que es innecesario la celebración de un proceso judicial ordinario. La sentencia dictada bajo esta regla se le conoce también como la "sentencia por confesión", o "sentencia por consentimiento".[55] La referida regla lee como sigue:

> (a) Podrá dictarse sentencia sin la celebración de un juicio o sin haberse iniciado un pleito, fundada en el consentimiento de una persona con capacidad legal para obligarse, ya sea por dinero debido o que haya de deber o para asegurar a otra contra responsabilidades eventuales contraídas a favor de la parte demandada, o por ambas cosas, en la forma prescrita en esta regla. Una vez el tribunal pase juicio, la misma será registrada y notificada por el Secretario o Secretaria del tribunal y **advendrá final y firme** desde la fecha de su registro.
> (b) Dicho consentimiento deberá aparecer de un escrito firmado bajo juramento por la parte demandada, haciendo constar lo siguiente:
>> (1) Su autorización para que se dicte sentencia en su contra por una suma determinada.
>> (2) Si es por dinero debido o que haya de deberse, expondrá concisamente los hechos y el origen de la deuda, y demostrará que la suma consentida se debe o se deberá en justicia.
>> (3) Si es con el fin de garantizar a la parte demandante contra una responsabilidad eventual, expondrá concisamente los hechos constitutivos de la responsabilidad y demostrará que la suma consentida no excede el importe de la responsabilidad.[56]

Es decir, la sentencia por consentimiento es un procedimiento mediante el cual una parte confiesa que adeuda a otra determinada cantidad y acepta que un tribunal dicte sentencia en su contra.[57] En este sentido, nuestro Tribunal Supremo ha expresado que, aunque la ley no requiere, ni el debido procedimiento lo demanda, que antes de dictarse sentencia el demandado sea emplazado,[58] **la parte promovente tiene la obligación de cumplir cabalmente con los requisitos exigidos por la ley y las disposiciones**

---

[54] 32 LPRA Ap. V, R. 35.4.
[55] J. Cuevas Segarra, *Tratado de derecho procesal civil*, 2da ed., San Juan, Pubs. J.T.S., 2011, T. III, a la pág. 1036.
[56] 32 LPRA Ap. V, R. 35.4. (Énfasis nuestro).
[57] *E.L.A. v. Isla Verde Inv. Corp.*, 98 DPR 255, 259 (1970).
[58] *Íd.*, a la pág. 260.

**aplicables, ya que, la más leve desviación resultará en la invalidez de la sentencia.**[59]

Cabe resaltar que, la regla en discusión dispone que el dictamen advendrá final y firme una vez la sentencia sea registrada y notificada por el Secretario o Secretaria del tribunal. Sin embargo, lo anterior, no constituye un impedimento para que el tribunal releve la sentencia por los mismos motivos que se consignan en la Regla 49.2 de Procedimiento Civil.[60] Sobre este particular, el Tribunal Supremo ha expresado que una parte no está huérfana de remedios contra la sentencia que se dicte por consentimiento y aclaró que, aunque se ha reconocido el derecho de la parte afectada de solicitar el relevo de la sentencia conforme a la Regla 49.2 de Procedimiento Civil, los tribunales ejercerán su discreción al resolver estas mociones.[61]

### D. Falta de Parte indispensable

Sabido es que se considera parte indispensable aquella que tenga un interés común, "sin cuya presencia no pueda adjudicarse la controversia".[62] Entiéndase que esta es una parte de la cual no se puede prescindir, y cuyo interés en el asunto es de tal magnitud que no puede dictarse un decreto final sin lesionar y afectar sustancialmente sus derechos, o sin permitir que la controversia quede, en tal estado, que su determinación final sea inconsistente con la equidad.[63] Así, pues, para que una parte sea indispensable, será necesario que su interés sea real e inmediato. De manera que su interés en el pleito no puede ser una mera especulación o un interés futuro.[64]

---

[59] *E.L.A. v. Isla Verde Inv. Corp.*, supra, a la pág. 259. (Énfasis nuestro).

[60] R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., Puerto Rico, Lexis Law Publishing, 2017, Vol. 1, a la pág. 409; 32 LPRA Ap. V, R. 49.2.

[61] *E.L.A. v. Isla Verde Inv. Corp.*, supra, a la pág. 260.

[62] Regla 16 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1.

[63] *FCPR v. ELA et al.*, 211 DPR 521, 531 (2023), citando a *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 46 (2014); *García Colón et al. v. Sucn. González*, 178 DPR 527, 548 (2010).

[64] *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 223 (2007).

En mérito de lo anterior, resulta importante determinar si el tribunal podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente.[65] Por ello, si la persona que se considera parte indispensable no está presente en el litigio, se trasgrede su debido proceso de ley. [66] A tenor, nuestro Alto Foro ha expresado que "lo verdaderamente trascendental es que la ausencia de parte indispensable priva de jurisdicción al tribunal.[67] Conforme a ello, la sentencia que se emita en ausencia de parte indispensable es nula.[68]

Acorde con lo antes expuesto, la omisión o no acumulación de partes indispensables constituye una defensa para la parte contra quien se reclama y puede ser fundamento para una moción de desestimación.[69] Sin embargo, lo anterior no constituye un impedimento para que el Tribunal conceda oportunidad de traer al pleito a la parte originalmente omitida, siempre y cuando pueda adquirir jurisdicción sobre esta.[70]

Consecuentemente, de tal arraigo es el interés de proteger a las partes indispensables que la no inclusión en el pleito de una parte indispensable constituye una defensa irrenunciable, la cual puede presentarse en cualquier momento durante el proceso.[71] En lo que a nosotros respecta, es menester acentuar que los tribunales apelativos pueden levantar *motu proprio* la falta de parte indispensable, debido a que ésta incide sobre la jurisdicción del tribunal.[72] No obstante, dicha desestimación no tendrá el efecto de una adjudicación en los méritos ni, por ende, de cosa juzgada.[73]

---

[65] *Romero v. S.L.G. Reyes*, 164 DPR 721, 733 (2005).
[66] *Rivera Marrero v. Santiago Martínez,* 203 DPR 462, 479 (2019).
[67] *FCPR v. ELA et al.*, supra, a la pág. 532; *García Colón et al. v. Sucn. González*, supra, a la pág. 550.
[68] *Íd.*
[69] Regla 10. 2(6) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2.
[70] *Mun. De San Juan v. Bosque Real S.E.*, 158 DPR 743, 757 (2003); *Sánchez v. Sánchez,* 154 DPR 645, 679 (2001).
[71] *Pérez Rosa v. Morales Rosado*, supra, a la pág. 223.
[72] *Íd.,* a las págs. 223-224.
[73] *Íd.*, a la pág. 224.

Por último, cabe resaltar que puede haber personas que no son partes indispensables, pero son necesarias para que se pueda conceder un remedio completo. A tenor, la Regla 16.2 de Procedimiento Civil indica que quedará a discreción del tribunal ordenar su comparecencia.[74]

### III

Ante la consideración de este Tribunal revisor se encuentra determinar si procede o no expedir el auto de *Certiorari* incoado por los peticionarios del título. En el caso ante nuestra consideración, los peticionarios recurren ante nos, luego de que el foro de instancia denegara una solicitud de relevo de sentencia. A través de sus dos (2) señalamientos de error, los peticionarios sostienen que el tribunal recurrido se equivocó al no relevar la *Sentencia* por consentimiento emitida en el caso del título, aduciendo que: (i) falta parte indispensable; y (ii) se dio por auténtico un documento, alegadamente, alterado, posterior a su firma y no reconocido por los peticionarios.

Como es sabido, un tribunal apelativo no intervendrá con el ejercicio de la discreción de los Tribunales de Primera Instancia, salvo que se demuestre que dicho tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[75] Puntualizamos que el *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[76] A esos efectos, la naturaleza discrecional del recurso de *Certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se

---

[74] 32 LPRA Ap. V, R. 16.2.
[75] *Rivera y otros v. Bco. Popular*, supra, a la pág. 155.
[76] *Rivera et al. v. Arcos Dorados et al.*, supra, a la pág. 207*; 800 Ponce de León v. AIG*, supra, a la pág. 174.

presume su corrección. Ahora bien, la expedición del recurso de *Certiorari,* al amparo de la Regla 52.1 de las Reglas de Procedimiento Civil,[77] no opera en el vacío, tiene que anclarse en una de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones.[78] Cónsono con lo anterior, tras evaluar minuciosamente el recurso presentado por los peticionarios, y luego de una revisión de la totalidad del expediente ante nos y del expediente ante el foro primario disponible a través de SUMAC, es nuestra apreciación que, al amparo de la la Regla 52.1 de las Reglas de Procedimiento Civil y la Regla 40 del Reglamento del Tribunal de Apelaciones, en este caso existen fundamentos jurídicos que nos mueven a ejercer nuestra facultad discrecional por lo que disponemos expedir el auto de Certiorari.

Así las cosas, luego de examinar los errores alzados por los peticionarios y tras considerar que guardan estrecha relación entre sí, procederemos a discutirlos de forma conjunta.

Según explicamos previamente, la sentencia por consentimiento es un mecanismo procesal que permite a una parte reconocer que adeuda una suma determinada y, así, autorizar al tribunal a dictar sentencia en su contra.[79] Para que este consentimiento sea válido, es indispensable cumplir con varios requisitos estrictamente regulados. En primer lugar, el consentimiento debe constar en un escrito firmado bajo juramento por la parte demandada.[80] Además, si se trata de una deuda existente o futura, el escrito debe exponer de forma clara y precisa los hechos y el origen de la obligación, demostrando que la suma reclamada es justa y adeudada.[81] En los casos en que el consentimiento tenga como propósito garantizar a la parte

---

[77] 32 LPRA Ap. V, R. 52.1.
[78] 4 LPRA Ap. XXII-B, R.40.
[79] *E.L.A. v. Isla Verde Inv. Corp.*, supra, a la pág. 259.
[80] 32 LPRA Ap. V, R. 35.4.
[81] *Íd.*

demandante una responsabilidad eventual, el escrito debe detallar los hechos que fundamenten dicha responsabilidad y probar que la suma acordada no excede el importe de la obligación.[82] Este procedimiento exige un cumplimiento riguroso de los requisitos legales, ya que cualquier desviación, por mínima que sea, puede resultar en la invalidez de la sentencia.[83]

En este caso, allá para el 24 de junio de 2024, bajo la firma de las partes de epígrafe se instó una *Petición* para que se dictara sentencia por consentimiento. En ella, figuraron como partes comparecientes B2B, Alacena y el señor Zayas. Por un lado, B2B compareció por conducto del Lcdo. Luis G. Parrilla Hernández, mientras que Alacena y el señor Zayas, lo hicieron por derecho propio. La antedicha *Petición* fue radicada en el SUMAC por el Lcdo. Parrilla Hernández. En dicha *Petición*, las partes expusieron haber suscrito dos contratos, allá para el 16 de junio de 2023, es decir, poco más de un año antes de que se iniciara el trámite judicial ante el foro de instancia. Conforme rezan los autos, en uno de los contratos, Alacena, por conducto del señor Zayas, como agente residente, se obligó a un contrato de compraventa con B2B, mientras que, en el segundo, el señor Zayas, en su carácter personal, se obligó a un contrato mediante el cual garantizó el cumplimiento de todo a lo que se obligó Alacena con B2B. Conviene desde ahora destacar que, en el presente caso, si bien es cierto que B2B era una de las partes, Alacena y el señor Zayas también lo eran. Los últimos dos, conforme se desprende de los autos, se representaban, en un inicio, por derecho propio, hasta que se dictó *Sentencia*.

Según surge del expediente, notamos que, posterior a la radicación, fue la propia representación de la parte recurrida, quien

---

[82] 32 LPRA Ap. V, R. 35.4.
[83] *E.L.A. v. Isla Verde Inv. Corp.*, supra, a la pág. 259.

presentó un escrito para satisfacer los aranceles de los peticionarios. Ahora bien, fue con la radicación de la *Petición*, pero, más aún, con el escrito mediante el cual B2B acompañó los aranceles de los peticionarios, que este Panel comenzó a notar un trámite accidentado, el cual indubitadamente nos llevó a la conclusión de que el foro apelado cometió los errores señalados. Abundamos.

De la faz de la *Petición* ante nos, se desprende que la misma fue juramentada por el señor Zayas, por sí y como agente residente de Alacena. Puntualizamos que dicha declaración jurada data del mes de junio de 2023, específicamente, del mismo día en que se suscribieron los dos contratos antes destacados. Ahora bien, dicha declaración jurada fue ubicada justo debajo de la firma de la *Petición*. Sin el ánimo de resultar reiterativos, esta *Petición* fue suscrita y radicada poco más de un año después de la fecha del juramento, entiéndase, en mayo de 2024. Salta a nuestras miradas el hecho de que, conforme se desprende de la *Petición*, específicamente, en los acápites 6 y 10, así como en la súplica, se haya dispuesto como cantidad adeudada cierta suma de dinero a la fecha del 23 de mayo de 2024. Establecido lo anterior, es claro que el juramento tomado a los peticionarios fue en una fecha previa al establecimiento de la cuantía reclamada como adeudada por B2B. Es menester destacar que, la Regla 35.4 de Procedimiento Civil enfatiza sobre las "sumas consentidas" en las sentencias por consentimiento, y subraya que la certeza y especificidad de dichas sumas son elementos esenciales para validar el consentimiento otorgado.[84] Por ello, el tribunal tiene la obligación de analizar cuidadosamente el consentimiento presentado y garantizar que cumpla plenamente con las disposiciones de la norma. Por otra parte, cabe señalar que, aun figurando como partes, Alacena y el

---

[84] 32 LPRA Ap. V, R. 35.4.

señor Zayas fueron excluidos de todo el proceso judicial, salvo por la notificación de la *Sentencia.* Hacemos hincapié en este dato porque siendo partes, porque surge así de la propia *Petición,* fueron preteridos del trámite judicial.

Dicho lo anterior y, frente a un dictamen desfavorable, y dado a que la Regla 35.4 de Procedimiento Civil, dispone que, una vez la sentencia sea registrada y notificada por el Secretario o Secretaria del tribunal, advendrá final y firme desde la fecha de su registro,[85] no quedó otra alternativa para los peticionarios que instar una solicitud de relevo de sentencia ante el foro de instancia. Como lo ha expresado el Tribunal Supremo, una parte no está huérfana de remedios contra la sentencia que se dicte por consentimiento ya que la Regla 49.2 de Procedimiento Civil,[86] ofrece el remedio adecuado para atacar la validez de las sentencias que se desvíen del procedimiento dispuesto por la Regla 35.4 de Procedimiento Civil.[87]

Conforme explicamos anteriormente, para que proceda el relevo de sentencia bajo la Regla 49.2 de Procedimiento Civil,[88] es necesario que el peticionario alegue, al menos, una de las razones enumeradas en la regla para tal relevo y, además, presente una moción bien fundamentada.[89] En el caso de autos, la moción solicitando el relevo de la sentencia presentada por los peticionarios cumplió con lo anterior, debido a que se instó a base de las causales provistas en los incisos (c) y (f) de la precitada Regla 49.2, los cuales disponen como fundamento para el relevo de una sentencia el fraude y cualquier otra razón que justifique la concesión de un remedio. En su moción esbozaron que el juramento fue alegadamente alterado **fraudulentamente** por la parte recurrida para obtener una sentencia a su favor sin que les concedieran a los peticionarios el

---

[85] 32 LPRA Ap. V, R. 35.4.
[86] *Íd.* R. 49.2.
[87] *E.L.A. v. Isla Verde Inv. Corp.*, supra, a la pág. 260; 32 LPRA Ap. V, R. 35.4.
[88] 32 LPRA Ap. V, R. 49.2.
[89] *García Colón et al v. Sucn. González*, supra, a la pág. 540.

debido proceso de ley. Según lo reseñado previamente, se desprende, incuestionablemente, que la anterior alegación tenía mérito y daba paso al relevo de la sentencia, ya que las inconsistencias y las desviaciones en los procesos ante el tribunal de instancia ocasionaron que el mecanismo incoado por la parte recurrida no fuera el más adecuado. Recordemos que, conforme a la precitada Regla 35.4, el Tribunal puede dictar sentencia sin celebrar un juicio o, incluso, sin iniciarse un pleito si se cumple con los criterios allí enunciados.

De otra parte, precisa señalar que, tanto en su moción solicitando el relevo de sentencia, así como en los errores esgrimidos en el recurso apelativo, los peticionarios plantean, en síntesis, que debe relevarse la sentencia emitida por falta de parte indispensable. En esencia, aducen que el señor Zayas estaba casado desde el año 2018, y que su esposa no fue incluida en el pleito. Además, expresó que el interés propietario de la esposa del señor Zayas quedó directamente afectado por la sentencia emitida.

En cuanto al planteamiento de la parte peticionaria de que procedía la desestimación de la sentencia por falta de parte indispensable, puntualizamos que, conforme esbozamos previamente, una parte indispensable es aquella cuya intervención en el litigio es imprescindible, ya que su interés en el asunto es de tal magnitud que no puede dictarse un decreto final sin lesionar y afectar sustancialmente sus derechos.[90] Entiéndase, que se trata de una parte que tiene un interés común, "sin cuya presencia no pueda adjudicarse la controversia".[91] En consecuencia, cualquier sentencia emitida en ausencia de parte indispensable es nula.[92]

---

[90] *FCPR v. ELA et al.*, supra, a la pág. 531, citando a *Cirino González v. Adm. Corrección et al.*, supra, a la pág. 46; *García Colón et al. v. Sucn. González*, supra, a la pág. 548.
[91] 32 LPRA Ap. V, R. 16.1.
[92] *FCPR v. ELA et al.,* supra*; García Colón et al. v. Sucn. González,* supra, a la pág. 550.

De tal arraigo es el interés de proteger a las partes indispensables que su no inclusión en el pleito constituye una defensa irrenunciable, la cual puede presentarse en cualquier momento durante el proceso.[93] Sin embargo, lo anterior, no constituye un impedimento para que el Tribunal conceda oportunidad de traer al pleito a la parte originalmente omitida, siempre y cuando pueda adquirir jurisdicción sobre esta.[94]

En el caso ante nuestra consideración, surge de los autos que, debido a la existencia de una sociedad legal de bienes gananciales entre el señor Zayas Pérez y su esposa, la señora Quiñones Mora, la mitad de todos los bienes sujetos de ejecución pertenecen o deben pertenecer a esta última. Por tal razón, la esposa del señor Zayas Pérez constituye una parte indispensable, dado a su interés propietario sobre los bienes que puedan ser objeto de embargo, lo que requiere su inclusión en el pleito para garantizar la protección de sus derechos. Por consiguiente, la omisión de la referida parte indispensable, igualmente, merecía que se concediera el relevo de la sentencia. Debemos recordar que, conforme a la Regla 49.2 de Procedimiento Civil, una sentencia es nula cuando se ha dictado sin jurisdicción o cuando al dictarla se ha quebrantado el debido proceso de ley.[95] Tal cosa es como ocurrió en este caso.

Dicho todo lo anterior, este Panel ha llegado a la determinación de que un examen de la totalidad de los autos ante nuestra consideración, incluyendo el expediente en el SUMAC, nos lleva forzosamente a concluir que, conforme a la normativa vigente sobre la procedencia de una solicitud para que se dicte sentencia por consentimiento, y según hemos discutido, en este caso existen ciertas inconsistencias que ameritan que el presente caso se ventile

---

[93] *Pérez Rosa v. Morales Rosado*, supra, a la pág. 223.
[94] *Mun. De San Juan v. Bosque Real S.E.*, supra, a la pág. 757; *Sánchez v. Sánchez*, supra, a la pág. 679.
[95] *García Colón et al v. Sucn. González*, supra, a la pág. 543.

por la vía ordinaria y no mediante el mecanismo instado. Dicho de otra forma, en un caso por la vía ordinaria, ambas partes tendrán la oportunidad de alegar y demostrar sus alegaciones hasta lograr la resolución de la controversia que les aqueja. Juzgamos que, dadas las alegaciones esgrimidas por los peticionarios, tanto en la solicitud de relevo de sentencia como en el recurso ante nos, el mecanismo de sentencia por consentimiento en este caso no es el idóneo para dar por concluidas las controversias entre las partes. Abona a todo lo anterior el hecho de que la esposa del señor Zayas, aun cuando juzgamos es una parte indispensable, fue preterida de este proceso.

IV

Por los fundamentos que anteceden, se *expide* el auto de *Certiorari* y se *revoca* la *Resolución* recurrida mediante la cual se denegó la solicitud de relevo de sentencia en este caso. En consecuencia, relevamos la *Sentencia* emitida el 23 de septiembre de 2024, notificada el 27 de septiembre de 2024, y se *desestima* la *Petición de pronunciamiento por consentimiento*, sin perjuicio de que pueda presentarse una acción civil ordinaria.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones